

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

LON ADELBERT PIERCE,   §
            §
  Petitioner,     §
            §
VS.          §  No. 05-2250-T/V
            §
DAVID MILLS,     §
            §
  Respondent.    §

---

### ORDER OF DISMISSAL
### ORDER DENYING CERTIFICATE OF APPEALABILITY
### ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
### AND
### ORDER DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

---

Petitioner Lon Adelbert Pierce, Tennessee Department of Correction ("TDOC") prisoner number 304581, an inmate at the West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee, filed a *pro se* petition pursuant to 28 U.S.C. § 2254 in the Western Division of the Western District of Tennessee on April 1, 2005, along with an application seeking leave to proceed *in forma pauperis*. District Judge Bernice B. Donald issued an order on April 12, 2005 denying leave to proceed *in forma pauperis* and directing the petitioner to remit the habeas filing fee within thirty days. The petitioner's copy of that order was returned by the post office on May 3, 2005 because the mailing envelope did not include the prisoner's TDOC number. Judge Donald issued an order on May 12, 2005

correcting the docket, directing the Clerk to mail the petitioner another copy of the April 12, 2005 order in a properly addressed envelope, and extending the time for compliance with the previous order. Pierce paid the habeas filing fee of $5.00 on May 26, 2005. Judge Donald issued an order on August 11, 2005 transferring the case to the Eastern Division of the Western District, where the convicting court is located. The Clerk shall record the respondent as WTSP warden David Mills.

I.   STATE COURT PROCEDURAL HISTORY

In February of 1999, Pierce was tried in the Benton County Circuit Court for the first degree murder of Larry Gene Peppers, Sr. and the attempted first degree murder of Larry Gene Peppers, Jr. The jury acquitted Pierce of the attempted murder charge, and the trial judge declared a mistrial on the first degree murder charge. Pierce was retried and convicted on the first degree murder charge in April of 1999. He was sentenced to life imprisonment. The Tennessee Court of Criminal Appeals affirmed. State v. Pierce, No. W19990-1433-CCA-R3-CD, 2000 WL 1664278 (Tenn. Crim. App. Oct. 23, 2000), *perm. app. denied* (Tenn. Sept. 2, 2003).

Pierce filed a *pro se* petition pursuant to the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-101 to -122,[1] in the Shelby County Criminal Court on or about November 4, 2002. Counsel was appointed, and an amended petition was filed on

---

[1] At the time of petitioner's postconviction proceedings, the Act was codified at Tenn. Code Ann. §§ 40-30-201 to -222. The statutory provisions were renumbered as Tenn. Code Ann. §§ 40-30-101 to -122 in 2003, without changing their substance. References to the Act in this order use the current numbering system.

December 18, 2002. The postconviction court conducted an evidentiary hearing on February 28, 2003. On March 5, 2003, the postconviction court entered an order granting Pierce the right to file a delayed application for permission to appeal to the Tennessee Supreme Court in his direct appeal. The postconviction court stayed all other matters contained in the petition pending the outcome of the delayed appeal. The Tennessee Supreme Court denied permission to appeal on September 2, 2003, and on September 17, 2003, the postconviction court denied the petition for postconviction relief. The Tennessee Court of Criminal Appeals affirmed. Pierce v. State, No. W2003-02384-CCA-R3-PC, 2004 WL 1872900 (Tenn. Crim. App. Aug. 20, 2004), perm. app. denied (Tenn. Dec. 20, 2004).

To assess the issues raised by Pierce in this petition, it is necessary briefly to set forth the facts, as set forth in the opinion of the Tennessee Court of Criminal Appeals on direct appeal:

> In the light most favorable to the state, the evidence at trial demonstrated that sometime around February 20, 1997, the defendant, Lon Adelbert Pierce, sold a truck to the victim, Larry Peppers, Sr., under an informal installment agreement. The defendant has a limited education, and Teresa Peppers, the victim's wife, was to handle the paperwork regarding transfer of title and recording of a lien in Pierce's favor for the unpaid portion of the sale price. Contrary to the agreement, Mrs. Peppers caused title to be transferred on February 20, 1997 without recordation [sic] of the lien. Thereafter, the victim failed to make scheduled payments to Pierce.
>
> Pierce attempted over the course of several days prior to March 21, 1997 to confront the Peppers, but they successfully avoided him. On March 18, 1997, Pierce called the Decatur County Clerk and informed him that the vehicle's title should have a lien recorded on it. On or about March 19, 1997, Pierce went to the Decatur County Courthouse and talked with several individuals about the situation. No one was able to resolve the issue for him.

3

During a conversation with Danny Turner, the Circuit Court Clerk, Pierce said he would like to take care of the situation the right way, but if that was not possible, he would take care of it his way.

Both the defendant and the victim did mechanic work and frequented the North 40 Truck Stop. In the two weeks prior to the victim's death on March 21, 1997, Douglas Glenn Whitfield, who owned the North 40 Truck Stop, was aware that Pierce was upset with the victim for not paying in accord with the installment contract on the truck. Pierce made statements to Whitfield that he would either get his truck or kill the victim. Whitfield recalled that Pierce became increasingly agitated in the week prior to March 21. Beth Mary Podgwaite was an employee of the North 40 Truck Stop. In March 1997, she was aware of Pierce's anger toward the victim over the sale of the truck. Podgwaite was present when Pierce said that he would take care of the situation however he could, and he would shoot the victim if necessary.

On the morning of March 21, 1997, Larry Peppers, Sr., his wife Teresa, and his son Larry Jr. left their home to drive to the North 40 Truck Stop. While traveling along on the highway, they saw Pierce, who turned his car around and followed them to the truck stop. The Peppers went inside, and Pierce followed. Pierce confronted the victim, and the victim tried to back away. Mr. Whitfield was concerned about the disagreement taking place inside his business and asked Pierce to go outside. Pierce complied. When the Peppers finished their business, they went outside. As the Peppers attempted to leave, Pierce approached their vehicle. He and the victim exchanged words. Larry Sr. told Larry Jr. to call the police, and the victim said that Larry Jr. should call the morgue. Pierce said he was going to get a gun. He leaned into his vehicle, which was parked nearby, and retrieved a gun. Twice he pointed the gun at Larry Sr., and Larry Jr. pushed Pierce's arm away. Pierce pointed the gun at Teresa Peppers, and again Larry Jr. pushed Pierce's arm away. As the two struggled over the gun, Pierce fired and wounded Larry Jr. The defendant chased Larry Sr. in the parking lot. Shots rang out, and Larry Sr. fell wounded. The defendant approached Larry Sr. and shot him again as he lay wounded on the pavement.[2] Teresa Peppers ran toward the truck stop, and Pierce followed her. Podgwaite, who was working inside the truck stop, heard the defendant say, "Were is she? I'm going to kill

---

[2]   The state court noted in a footnote that "[w]itness accounts varied regarding the total number of shots fired; however, a total of eight spent cartridge casings were recovered." State v. Pierce, 2000 WL 1664278, at *2 n.1.

her." Whitfield intervened and told Pierce to leave. Pierce went outside and stayed on the premises for about five minutes before driving off.

Larry Peppers, Sr. died from his injuries. Larry Peppers, Jr. survived.

After Pierce left the truck stop, he changed vehicles and drove to Arkansas. Eventually, he went to Mexico. He lived on the lam for fourteen months but finally surrendered to authorities in Phoenix, Arizona.

Prior to surrendering, Pierce talked by telephone with Benton County Sheriff Bobby Shannon. A tape of one of their conversations was played for the jury. In it, Pierce acknowledged killing the victim. He also said, "Yeah, I wanted to kill him. I went plumb nuts."

To counter the state's proof, Pierce presented evidence that he was in dire financial condition, and he became very distraught over the victim failing to pay him and the victim's wife failing to record the lien on the truck. Pierce denied having said that he was going to kill the victim; he claimed he actually said the victim was killing him by not paying for the truck. Pierce claimed he had been so anxious over his financial woes that he had not slept for a couple of days before the shooting. He could not remember the last time he had eaten. He claimed that he "lost it" during his confrontation with the victim after the victim said that he had sold the truck and had no intention of paying for it. He further claimed he could not remember what happened next. He vaguely recalled struggling with someone. The next thing he remembered was Mr. Whitfield telling him to get out of the truck stop. Pierce claimed that at this point, he looked down and saw the gun in his hand. He walked outside and saw Larry Jr. and Larry Sr. on the ground and realized he must have shot them.

Pierce testified that after the shooting, he went through a series of vehicle changes during his flight to Arkansas and Mexico. On cross-examination, he was asked who helped him get the pickup truck in which he drove to Mexico. He refused to identify who brought him the truck and to answer whether this individual provided him with money and clothing.

In support of a claim of diminished capacity, Pierce presented expert testimony from a psychiatrist and a neuropsychologist that he was suffering from major depression and hypoglycemia related to diabetes on the day of the crime. Additionally, Pierce had a below-average IQ in the borderline mentally

retarded range and was diagnosed by the neuropsychologist as having borderline mental functioning. According to the expert proof, Pierce had a history of major depression and suicidal thoughts dating back to 1994. The depression would result in impairment of thinking, talking, concentration and attention. Depressed individuals are easily upset because they feel like they are barely surviving. The defense psychiatrist opined that the money the victim owed Pierce represented a financial "life boat" following a number of financial adversities Pierce had suffered. Regarding hypoglycemia, the psychiatrist testified that individuals who are suffering from hypoglycemia will first lose control of their emotions and passions. The ability to think begins to shut down, and amnesia can result. Ultimately, in severe cases, the brain shuts down. Finally, the defense psychiatrist testified that as a result of the defendant's low IQ, he had diminished ability to think things through. The defense psychiatrist opined that all of these things combined with sleep deprivation resulted in diminished capacity for Pierce to have the capacity to act intentionally. On cross-examination, the defense psychiatrist conceded that Pierce said in the doctor's interview of him that he was going to kill the victim if he did not get his money.

In rebuttal, the state presented the testimony of a psychologist who performed a forensic evaluation of Pierce. This expert opined that Pierce was not legally insane at the time of his offense and was not severely clinically depressed. He recounted that in his interview with Pierce, the defendant did not mention anything about lack of memory of the incident, a blackout, or hypoglycemia. The defendant reported to this expert that he was not having trouble with his diabetes. Pierce spoke very negatively of the victim to this psychologist and said that the victim deserved to be shot.

The state also presented the rebuttal testimony of a medical doctor, who opined that an individual suffering from hypoglycemia would have difficulty hitting a target or driving. It would be impossible for such an individual to change cars twice and go on a two-day driving spree. Further, it would be impossible for an individual to have hypoglycemia causing amnesia for a two to five minute period of time and then awaken and know what was going on.

In surrebuttal, the defense presented evidence that the state's psychological expert evaluated Pierce for only about 30 minutes.

State v. Pierce, 2000 WL 1664278, at *1-*4.

II.   PETITIONER'S FEDERAL HABEAS CLAIMS

In this federal habeas petition, Pierce raises the following issues:

1.   Whether the evidence was insufficient to justify a rational trier of fact from finding guilt beyond a reasonable doubt;

2.   Whether the trial court erred in allowing a clinical psychologist to testify for the State on the issue of diminished capacity, as the witness is not qualified;

3.   Whether the trial court erred in allowing photographs of the victim into evidence;

4.   Whether the trial court erred in not admonishing the prosecution for improper remarks in closing argument; and

5.   Whether the trial court erred in overruling the defense objection as to the relevance of the identity of the individual who may have assisted Pierce in the exchange of vehicles;

6.   Whether the trial court erred, in the presence of the jury, when he directed Pierce to testify as to the identity of the individual who may have assisted him in the exchange of vehicles;

7.   Whether the retrial of Pierce on the first degree murder charge violated the Double Jeopardy Clause;

8.   Whether trial counsel rendered ineffective assistance, in violation of the Sixth Amendment;

9.   Whether trial counsel failed to subpoena witnesses who would have established that the shooting occurred in the heat of passion, which could permit the jury to find that the killing constituted voluntary manslaughter;

10.   Whether appellate counsel rendered ineffective assistance when he failed to file an application for permission to appeal to the Tennessee Supreme Court the decision of the Tennessee Court of Criminal Appeals on direct appeal; and

11.    Whether trial counsel failed to provide Pierce with a copy of the transcript as he requested.

III.    LEGAL STANDARDS APPLICABLE TO HABEAS PETITIONS

    A.    Waiver and Procedural Default

    Twenty-eight U.S.C. § 2254(b) states, in pertinent part:

(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)    the applicant has exhausted the remedies available in the courts of the State;  or
    (B)    (I)    there is an absence of available State corrective process; or
        (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.
(2)    An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

Thus, a habeas petitioner must first exhaust available state remedies before requesting relief under § 2254. E.g., Granberry v. Greer, 481 U.S. 129, 133-34 (1987); Rose v. Lundy, 455 U.S. 509, 519 (1982); Rule 4, Rules Governing § 2254 Cases ("Section 2254 Rules"). A petitioner has failed to exhaust his available state remedies if he has the opportunity to raise his claim by any available state procedure. 28 U.S.C. § 2254(c); Preiser v. Rodriguez, 411 U.S. 475, 477, 489-90 (1973).

To exhaust his state remedies, the petitioner must have presented the very issue on which he seeks relief from the federal courts to the courts of the state that he claims is wrongfully confining him. Picard v. Connor, 404 U.S. 270, 275-76 (1971); Rust v. Zent,

17 F.3d 155, 160 (6th Cir. 1994). "[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief." Gray v. Netherland, 518 U.S. 152, 162-63 (1996). "'[T]he substance of a federal habeas corpus claim must first be presented to the state courts.'" Id. at 163 (quoting Picard, 404 U.S. at 278). A habeas petitioner does not satisfy the exhaustion requirement of 28 U.S.C. § 2254(b) "by presenting the state courts only with the facts necessary to state a claim for relief." Id.

Conversely, "[i]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." Id. When a petitioner raises different factual issues under the same legal theory he is required to present each factual claim to the highest state court in order to exhaust his state remedies. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pillette v. Foltz, 824 F.2d 494, 496 (6th Cir. 1987). He has not exhausted his state remedies if he has merely presented a particular legal theory to the courts without presenting each factual claim. Pillette, 824 F.2d at 497-98. The claims must be presented to the state courts as a matter of federal law. "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982); see also Duncan v. Henry, 513 U.S. 364, 366 (1995) (per curiam) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only

in federal court, but in state court.").

Moreover, the state court decision must rest primarily on federal law. Coleman v. Thompson, 501 U.S. 722, 734-35 (1991). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, the petitioner ordinarily is barred by this procedural default from seeking federal habeas review. Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977). However, the state-court decision need not explicitly address the federal claims; instead, it is enough that the petitioner's brief squarely presents the issue. Smith v. Digmon, 434 U.S. 332 (1978) (per curiam); see also Baldwin v. Reese, 541 U.S. 27, 30-32 (2004) (a federal habeas claim is fairly presented to a state appellate court only if that claim appears in the petitioner's brief).

When a petitioner's claims have never been actually presented to the state courts but a state procedural rule prohibits the state court from extending further consideration to them, the claims are deemed exhausted, but procedurally barred. Coleman, 501 U.S. at 752-53; Teague v. Lane, 489 U.S. 288, 297-99 (1989); Wainwright v. Sykes, 433 U.S. at 87-88; Rust, 17 F.3d at 160.

A petitioner confronted with either variety of procedural default must show cause for the default and that he was prejudiced in order to obtain federal court review of his claim. Teague, 489 U.S. at 297-99; Wainwright v. Sykes, 433 U.S. at 87-88. Cause for a procedural default depends on some "objective factor external to the defense" that interfered

10

with the petitioner's efforts to comply with the procedural rule. <u>Coleman</u>, 501 U.S. at 752-53; <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).

A petitioner may avoid the procedural bar, and the necessity of showing cause and prejudice, by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750. The petitioner must show that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995) (quoting <u>Murray</u>, 477 U.S. at 496). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." <u>Id.</u>

The conduct of petitioner's postconviction proceedings was governed by the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. § 40-30-101 *et seq*. The Act specifies types of procedural default that might bar a state court from reviewing the merits of a constitutional claim. A one-year statute of limitations governs the filing of petitions. <u>Id.</u> at § 40-30-102. The statute also enunciates a standard by which state courts are to determine whether to consider the merits of post-conviction claims:

> Upon receipt of a petition in proper form, or upon receipt of an amended petition, the court shall examine the allegations of fact in the petition. If the facts alleged, taken as true, fail to show that the petitioner is entitled to relief or fail to show that the claims for relief have not been waived or previously determined, the petition shall be dismissed. The order of dismissal shall set forth the court's conclusions of law.

Id. at § 40-30-106(f).[3]

The Sixth Circuit has upheld the dismissal of a Tennessee prisoner's habeas petition as barred by a procedural default caused by failing to file within the Tennessee statute of limitations on postconviction relief. Hannah v. Conley, 49 F.3d 1193, 1194-95 (6th Cir. 1995) (construing prior statute with a three-year statute of limitations and stating "the language of Tenn. Code Ann. § 40-30-102 is mandatory"). In this case, Pierce's right to file any further state postconviction petition is barred by the one-year statute of limitations and, therefore, he does not have the option of returning to state court to exhaust any claim presented in this § 2254 petition.

B.     Legal Standard for Merits Review

The standard for reviewing a habeas petitioner's constitutional claims on the merits is enunciated in 28 U.S.C. § 2254(d). That section provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

---

[3]  Tenn. Code Ann. § 40-30-106 continues:
(g)     A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:
  (1)     The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or
  (2)     The failure to present the ground was the result of state action in violation of the federal or state constitution.
(h)     A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence.

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This Court must determine whether the state court adjudications of the claims that were decided on the merits were either "contrary to" or an "unreasonable application of" "clearly established" federal law as determined by the United States Supreme Court. This Court must also determine whether the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding.

1.    § 2254(d)(1)

The Supreme Court has issued a series of decisions setting forth the standards for applying § 2254(d)(1).[4]  In (Terry) Williams v. Taylor, 529 U.S. 362, 404 (2000), the Supreme Court emphasized that the "contrary to" and "unreasonable application of" clauses should be accorded independent meaning. A state court decision may be found to violate the "contrary to" clause under two circumstances:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent. Accordingly, in either of these two scenarios, a federal court will be unconstrained by § 2254(d)(1) because the state-court decision falls within that provision's

_____

[4]  By contrast, there is a dearth of caselaw concerning the standards for applying § 2254(d)(2).

"contrary to" clause.

Id. at 405-06 (citations omitted); see also Price v. Vincent, 538 U.S. 634, 640 (2003); Lockyer v. Andrade, 538 U.S. 63, 73 (2003); Bell v. Cone, 535 U.S. 685, 694 (2002).[5] The Supreme Court has emphasized the narrow scope of the "contrary to" clause, explaining that "a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams, 529 U.S. at 406; see also id. at 407 ("If a federal habeas court can, under the 'contrary to' clause, issue the writ whenever it concludes that the state court's application of clearly established federal law was incorrect, the 'unreasonable application' test becomes a nullity.").

A federal court may grant the writ under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." Cone, 535 U.S. at 694; see also Andrade, 538 U.S. at 75; Williams, 529 U.S. at 409.[6] "[A]n unreasonable application of federal law is different from an incorrect application of federal law."

---

[5]  The Supreme Court has emphasized that this standard "does not require citation of our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam) (emphasis in original).

[6]  Although the Supreme Court in Williams recognized, in dicta, the possibility that a state court decision could be found to violate the "unreasonable application" clause when "the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," 529 U.S. at 407, the Supreme Court expressed a concern that "the classification does have some problems of precision," id. at 408.  The Williams Court concluded that it was not necessary "to decide how such 'extension of legal principle' cases should be treated under § 2254(d)(1)," id. at 408-09, and, to date, the Supreme Court has not had occasion to revisit the issue.  See Williams v. Coyle, 260 F.3d 684, 699-700 (6th Cir. 2001), cert. denied, 536 U.S. 947 (2002).

Williams, 529 U.S. at 410.[7] "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409.[8]

Moreover, § 2254(d)(1) refers to "clearly established" federal law, "as determined by the Supreme Court of the United States." This provision "expressly limits the source of law to cases decided by the United States Supreme Court." Harris v. Stovall, 212 F.3d 940, 944 (6th Cir. 2000). As the Sixth Circuit explained:

> This provision marks a significant change from the previous language by referring only to law determined by the Supreme Court. A district court or court of appeals no longer can look to lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.

Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1999) (citing 17A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4261.1 (2d ed. Supp. 1998)); see also Harris, 212 F.3d at 944 ("It was error for the district court to rely on authority other than that of the

---

[7] See also Andrade, 538 U.S. at 75 (lower court erred by equating "objectively unreasonable" with "clear error": "These two standards, however, are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) (holding that the lower court "did not observe this distinction [between an incorrect and an unreasonable application of federal law], but ultimately substituted its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d)."); Cone, 535 U.S. at 698-99 ("For [a habeas petitioner] to succeed . . . , he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly."); Williams, 529 U.S. at 411 ("Under § 2254(d) (1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.").

[8] See also Brown v. Payton, 125 S. Ct. 1432, 1442 (2005) ("Even were we to assume the '"relevant state-court decision applied clearly established federal law erroneously or incorrectly,"' . . . there is no basis for further concluding that the application of our precedents was 'objectively unreasonable.'") (citations omitted).

Supreme Court of the United States in its analysis under § 2254(d).").   Finally, in determining whether a rule is "clearly established," a habeas court is entitled to rely on "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  <u>Williams</u>, 529 U.S. at 412.

      2.    § 2254(d)(2)

There is almost no case law about the standards for applying § 2254(d)(2), which permits federal courts to grant writs of habeas corpus where the state court's adjudication of a petitioner's claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The few decisions interpreting this provision have attempted to incorporate the standards applicable to the "unreasonable application" prong of § 2254(d)(1).  Thus, the Sixth Circuit stated, in an unpublished decision, that

> a federal habeas court may not grant habeas relief under § 2254(d)(2) simply because the court disagrees with a state trial court's factual determination. Such relief may only be granted if the state court's factual determination was "objectively unreasonable" in light of the evidence presented in the state court proceedings.  Moreover . . . , the state court's factual determinations are entitled to a presumption of correctness, which is rebuttable only by clear and convincing evidence.

<u>Young v. Hofbauer</u>, 52 Fed. Appx. 234, 236 (6th Cir. Dec. 2, 2002) (citing 28 U.S.C. § 2254(e)(1));[9] <u>see also</u> <u>Stanley v. Lazaroff</u>, 01-4340, 2003 WL 22290187, at *9 (6th Cir. Oct. 3, 2003); <u>Jackson v. Holland</u>, No. 01-5720, 2003 WL 22000285, at *7 (6th Cir. Aug.

---

[9]  <u>See also</u> <u>Sumner v. Mata</u>, 449 U.S. 539, 546-47 (1981) (applying presumption of correctness to factual determinations of state appellate courts).

21, 2003) ("Though the Supreme Court has not yet interpreted the 'unreasonable determination' clause of § 2254(d)(2), based upon the reasoning in <u>Williams</u>, it appears that a court may grant the writ if the state court's decision is based on an objectively unreasonable determination of the facts in light of the evidence presented during the state court proceeding.") (citing <u>Torres v. Prunty</u>, 223 F.3d 1103, 1107-08 (9th Cir. 2000)).

IV.    ANALYSIS OF PETITIONER'S CLAIMS

    A.    The sufficiency of the evidence (Claim 1)

In his first claim for relief, Pierce argues that the evidence was insufficient to sustain his conviction for first degree murder. Pierce raised this issue on direct appeal, and the Tennessee Court of Criminal Appeals rejected it on procedural grounds and on the merits:

> In his first issue, the defendant challenges the sufficiency of the convicting evidence in light of his claim of diminished capacity. The defendant has included a sparse two-sentence argument on this issue in his brief. His argument contains no citation to authority or to the record. This issue is waived. See Tenn. R. App. P. 27(a)(7); Tenn. R. Ct. Crim. App. 10(b).

> Had this issue not been waived, we nevertheless would have found it without merit.

> When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 324 . . . (1979); <u>State v. Duncan</u>, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. <u>State v. Dykes</u>, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).  Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Cabbage, 571 S.W.2d at 835.

In pertinent part, first degree murder is "[a] premeditated and intentional killing of another . . . ." Tenn. Code Ann. § 39-13-202(a)(1) (1997). Tennessee law provides that an accused may present evidence of his "diminished capacity" in order to "negate the existence of the culpable mental state required to establish the criminal offense." State v. Hall, 958 S.W.2d 679, 690 (Tenn.), cert. denied, --- U.S. ----, 119 S. Ct. 2348 (1998). At trial, the defendant sought to negate the existence of the element of intent by presenting evidence of his depression and hypoglycemia.

The jury heard evidence that the defendant made statements of intent to kill the victim in the days prior to the victim's death.  The defendant followed the victim and his family to a truck stop, confronted the victim, told the victim's son to call the morgue, retrieved a gun from his car, shot the victim, then shot the victim again as he lay wounded on the ground. The jury also heard evidence of the defendant's hypoglycemia and major depression. Evidence of the defendant's mental and physical ailments was contested by the state.  After hearing all of the evidence, the jury chose to accredit the evidence offered by the state over that offered by the defendant.  This conclusion was within the province of the jury as the trier of fact, and we may not substitute our own judgment for that of the jury. Thus, the defendant has failed to demonstrate the impropriety of his conviction on appeal.

State v. Pierce, 2000 WL 1664278, at *4-*5.

The first matter to be considered is whether the decision of the Tennessee Court of

Criminal Appeals that the issue was waived due to Pierce's failure adequately to brief it on

18

appeal constitutes an independent and adequate procedural ground that precludes federal habeas review. See *supra* p. 10. The Sixth Circuit applies a four-part test in determining whether a habeas claim has been procedurally defaulted due to a petitioner's failure to comply with a state procedural rule:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . .
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . .
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1985) (citations and footnote omitted); see also Clinkscale v. Carter, 375 F.3d 430, 440-41 (6th Cir. 2004), *cert. denied*, 125 S. Ct. 1316 (2005).

The first requirement, that the petitioner failed to comply with a state procedural rule, has been satisfied in this case. Rule 10(b) of the Rules of the Tennessee Court of Criminal Appeals, which governs inadequate briefs, provides that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Moreover, Rule 27(a)(7) of the Tennessee Rules of Appellate

19

Procedure, which governs the contents of an appellant's brief, requires, *inter alia*,

> [a]n argument, which may be preceded by a summary of argument, setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on.

The Tennessee Court of Criminal Appeals concluded that Pierce had failed to comply with those rules because his brief to that court devoted "a sparse two-sentence argument" to that issue, with "no citation to authority or to the record." State v. Pierce, 2004 WL 1664278, at *4. Although Pierce has not supplied a copy of his brief to the Tennessee Court of Criminal Appeals on direct appeal, the Court notes that Pierce's argument in support of this issue in his federal habeas petition consists of two conclusory statements, supported by no legal authority or citations to the record.

The second requirement, that the state court actually enforced the procedural requirement in this case, has also been satisfied. The Tennessee Court of Criminal Appeals stated unequivocally that the issue has been waived. Id. The fact that the Tennessee Court of Criminal Appeals went on to address the sufficiency of the evidence claim on the merits of this claim does not alter this conclusion. As the Supreme Court explained:

> After Harris [v. Reed, 489 U.S. 255 (1989)], federal courts on habeas corpus review of state prisoner claims, like this Court on direct review of state court judgments, will presume that there is no independent and adequate state ground for a state court decision when the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion."

Coleman v. Thompson, 501 U.S. at 734-35 (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)); see also id. at 733 ("After Long, a state court that wishes to look to federal law for guidance or as an alternative holding while still relying on an independent and adequate state ground can avoid the presumption by stating 'clearly and expressly that [its decision] is . . . based on bona fide separate, adequate, and independent grounds.'") (quoting Long, 463 U.S. at 1041). In this case, the opinion of the Tennessee Court of Criminal Appeals plainly states that its decision was based on Pierce's failure adequately to brief the issue and that its consideration of the merits of the claim constituted only an alternative holding.

The third requirement, that the state procedural rule must be an "adequate and independent" state ground, focuses on "the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims." Maupin, 785 F.2d at 138; see also Henry v. State, 379 U.S. 443, 447-48 (1965). The adequacy of a state procedural rule "'is itself a federal question.'" Lee v. Kemna, 534 U.S. 362, 375 (2002); see also Henry, 379 U.S. at 447. "Ordinarily, violation of 'firmly established and regularly followed' state rules . . . will be adequate to foreclose review of a federal claim." Lee, 534 U.S. at 376. The Supreme Court has held a procedural ground to be inadequate in "exceptional cases," such as where the application of a "generally sound rule" has been deemed "exorbitant." Id.

In this case, the Tennessee procedural rules at issue are plainly designed to ensure that an applicant fully and fairly presents his claims to the state appellate courts. If a habeas

petitioner need not fully and fairly present his habeas claims to the state courts, including appropriate citations to the record and to relevant legal authority, the exhaustion requirement set forth in 28 U.S.C. § 2254(b)(1), and its concomitant concerns for respect of state courts, have been eviscerated. Accordingly, the third <u>Maupin</u> requirement has been satisfied in this case.

Because the first three requirements of <u>Maupin</u> have been satisfied in this case, the claim is barred by procedural default unless Pierce can demonstrate "cause" for his default and "prejudice." <u>See</u> *supra* pp. 10-11. The petition in this case does not address the state court's holding that the claim has been waived and, as a result, does not attempt to demonstrate cause or prejudice.

Even if the sufficiency of the evidence issue were properly before this Court, Pierce is not entitled to relief on this claim. In <u>Jackson v. Virginia</u>, 443 U.S. 307, 324 (1979), the Supreme Court held:

> in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 —if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof beyond a reasonable doubt.

This standard requires a federal district court to examine the evidence in the light most favorable to the State. <u>Id.</u> at 324, 326 ("a federal habeas corpus court faced with a record of conflicting facts that supports conflicting inferences must presume—even if it does not affirmatively appears in the record—that the trier of fact resolved any such conflicts in favor

of the prosecution, and must defer to that resolution"). Applying those standards, the Supreme Court rejected Jackson's claim that there was insufficient evidence in the record to permit a trier of fact to conclude, beyond a reasonable doubt, that he was guilty of premeditated first-degree murder. See id. at 324-26.

An analysis of Pierce's petition is complicated by his failure to refer to the legal standards for reviewing habeas claims on the merits. See *supra* pp. 12-17. Pierce makes no argument that the decision of the Tennessee Court of Criminal Appeals on this issue was contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1). This is "a run-of-the-mill state-court decision applying the correct legal rule from [Jackson v. Virginia] to the facts of a prisoner's case" and, therefore, it "does not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams v. Taylor, 529 U.S. at 406.

It is not clear whether Pierce contends that the decision of the Tennessee Court of Criminal Appeals was an unreasonable application of Jackson v. Virginia. Although it can be inferred from the petition that Pierce disagrees with the state court's decision, Pierce makes no attempt to analyze the state court's reasoning in light of Jackson. Moreover, Pierce makes no effort to demonstrate that the state court's decision is objectively unreasonable, rather than merely incorrect. Williams, 529 U.S. at 410; see also *supra* p. 14 n.6.

Pierce seems to contend that the decision of the Tennessee Court of Criminal Appeals was based on an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d)(2). However, the petitioner fails to demonstrate that the factual findings of the Tennessee Court of Criminal Appeals were objectively unreasonable. Although Pierce mentions that he suffered from diminished capacity at the time of the murder, he fails to address the testimony that, in the days leading up to the murder, he stated his intention to shoot the victim if the dispute about the truck were not otherwise resolved. Pierce also fails to address his decision, on the day of the murder, to follow the victim to the truck stop, and his statement to the victim's son, at the outset of the confrontation, that he should call the morgue. Finally, although Pierce presented expert testimony in support of his diminished capacity defense, that evidence was controverted by the State's expert and the jury chose not to credit it. Thus, Pierce has not satisfied his burden of demonstrating that the conclusion of the Tennessee Court of Criminal Appeals, that the evidence was sufficient to support his conviction for first degree murder, is objective unreasonable.

For these reasons, the petitioner is not entitled to relief on Claim 1.

B.      The admission of the expert opinion of the State's psychologist (Claim 2)

In his second claim for relief, Pierce contends that the trial court erred in allowing the State's expert, a clinical psychologist, to testify on the issue of diminished capacity. Pierce argues, citing State v. Hall, 958 S.W.2d 679 (Tenn. 1997), that only psychiatrists are competent to testify on the issue. Pierce raised this issue on direct appeal, and the Tennessee

Court of Criminal Appeals rejected it on the merits. State v. Pierce, 2000 WL 1664278, at *5-*6.

As a threshold issue, it does not appear that this claim is cognizable in a petition pursuant to 28 U.S.C. § 2254. This Court is authorized to issue a writ of habeas corpus with respect to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Error in the application of state law is not cognizable in a federal habeas proceeding. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); Pulley v. Harris, 465 U.S. 37, 41 (1984). Pierce's presentation of this claim in his § 2254 petition does not cite any federal constitutional provisions or any federal cases pertaining to this issue. Moreover, the treatment of this issue by the Tennessee Court of Criminal Appeals considers only the application of state evidentiary rules. Therefore, petitioner is not entitled to federal habeas relief with respect to the issue raised in Claim 2.

C.    The admission of photographs of the victim (Claim 3)

In his third claim for relief, Pierce argues that the trial court erred by allowing the introduction of photographs of the victim taken after his death, which he characterizes as "gruesome," cumulative in nature, unduly prejudicial, and largely irrelevant. Pierce raised this issue on direct appeal, and the Tennessee Court of Criminal Appeals rejected it on the merits. State v. Pierce, 2000 WL 1664728, at *6-*7.

25

Just as with the previous issue, this issue is not cognizable in a federal habeas petition because it concerns an alleged error in the application of state law. The state court analyzed the issue solely under state law, and Pierce's federal petition relies entirely on state evidentiary rules and state court decisions interpreting state law. He does not cite any federal constitutional provisions, and he does not argue that the alleged state law violations were so egregious as to run afoul of the Due Process Clause of the Fourteenth Amendment. Accordingly, petitioner also is not entitled to federal habeas relief with respect to the issue raised in Claim 3.

D.     The allegedly improper remark during closing arguments (Claim 4)

In his fourth claim for relief, Pierce asserts that the trial court erred by failing to admonish the prosecution for improper remarks during closing argument. Pierce raised this issue on direct appeal, where the Tennessee Court of Criminal Appeals ruled as follows:

> The defendant's next issue is whether the trial court erred in failing to admonish the prosecutor for remarks made during closing argument. Closing arguments of the parties are not included in the record on appeal. We are unable to pass upon an issue which is not supported by an adequate record of what transpired in the court below. See Tenn. R. App. P. 24(b) ("The appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal."). This issue is waived. See State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991).
>
> Additionally, the defendant has included no citation to authority in his argument. The issue is waived on this basis, as well. See Tenn. R. App. P. 27(a)(7); Tenn. R. Ct. Crim. App. 10(b).

State v. Pierce, 2000 WL 1664278, at *7. The state court did not address the issue on the merits.

Because the state court decided the issue on the basis of an independent and adequate state procedural rule, the claim has not been exhausted in state court. There are no further avenues available to Pierce for exhausting the claim in state court. Therefore, the claim is deemed exhausted but procedurally barred. Accordingly, petitioner is not entitled to habeas relief with respect to Claim 4.

E.      The trial court's ruling that the identity of the individual who assisted Pierce in his flight was relevant (Claim 5)

In his fifth claim for relief, Pierce argues that the trial court erred in its holding that evidence of the identity of the individual who assisted him in exchanging vehicles during his flight was relevant and admissible. Pierce raised this issue on direct appeal, and the Tennessee Court of Criminal Appeals rejected it on the merits:

> In his fifth issue, the defendant claims that the trial court improperly ruled that evidence of the identity of the individual who assisted the defendant in exchanging vehicles during his flight was relevant and admissible. In his brief, the defendant makes a two-sentence argument and generally asserts that the evidence was not material to any of the elements of the offense. He has failed to include citation to the record or relevant authority. This issue is waived. See Tenn. R. App. P. 27(a)(7); Tenn. R. Ct. Crim. App. 10(b).

> However, we perceive no error. Evidence of the defendant's flight and attempts to evade arrest, when considered with other facts and circumstances, may lead to an inference of guilt. See, e.g., State v. Zagorski, 701 S.W.2d 808, 813 (Tenn. 1985). Flight may show "consciousness of guilt." Buckingham v. State, 540 S.W.2d 660, 665 (Tenn. Crim. App. 1976).

Thus, evidence about the defendant's flight and its surrounding circumstances was relevant to the question of the defendant's guilt of the crime of first degree murder. The trial court acted within its discretion in ruling that this evidence was admissible.

State v. Pierce, 2000 WL 1664278, at *7.

Again, the state court decided the issue on the basis of an independent and adequate state procedural rule, so the claim has not been exhausted in state court. There are no further avenues available to Pierce for exhausting the claim in state court. Therefore, the claim is deemed exhausted but procedurally barred. Moreover, Pierce's brief frames this issue solely in terms of relevance, which is a matter of Tennessee law not federal law. Thus, the issue is not cognizable in a § 2254 petition for that reason as well. For all the foregoing reasons, petitioner is not entitled to relief on Claim 5.

F.     The trial court's direction to Pierce to answer the question about the identity of the individual who assisted him (Claim 6)

In his sixth claim for relief, Pierce asserts that the trial judge erred when, in the presence of the jury, he directed Pierce to testify as to the identity of the individual who may have assisted him in the exchange of vehicles. Pierce seems to contend that this statement demonstrated that the trial judge believed Pierce to be guilty. Pierce raised this issue on direct appeal, and the Tennessee Court of Criminal Appeals rejected it on the merits:

In a related issue, the defendant argues that the trial court expressed belief in the defendant's guilt by instructing the defendant to reveal the identity of the individual who assisted in his flight.

We agree with the defendant that the trial court must take great care to indicate no opinion of the defendant's guilt before the jury. See Veal v. State,

28

196 S.W.2d 443, 268 S.W.2d 345 (1954). However, we fail to see any indication of the trial court's opinion of the defendant's guilt or innocence. The defendant has not offered any precise identification of which statements of the trial court he finds objectionable, nor has he explained how any such remarks indicated the trial court's opinion that the defendant was guilty of the crime. We perceive no error.

State v. Pierce, 2000 WL 1664278, at *8.

Again, Pierce's petition presents this issue solely as a matter of state law and, therefore, the issue does not appear to be cognizable in a § 2254 petition. He does not cite any federal constitutional provisions, and he does not argue that the alleged comment by the trial judge on this collateral issue was so egregious as to run afoul of the Due Process Clause of the Fourteenth Amendment. Moreover, there is no indication from the decision of the Tennessee Court of Criminal Appeals on direct appeal that Pierce presented to the state courts any argument that the judge's comment, whatever it may have been, constituted unconstitutional trial error. Even if Pierce had cited Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), in his state court brief, that decision does not create an independent constitutional claim; instead, the Supreme Court in Brecht enunciated a standard to be applied in cases in which constitutional trial error had been established. Id. at 637-38. Thus, because Pierce did not argue in state court, and does not now argue, that the trial judge's comment was itself a due process violation, he is not entitled to the benefit of Brecht. Estelle v. McGuire, 502 U.S. at 68 n.2 (a violation of state law that prejudices the defendant provides no basis for federal habeas relief). Accordingly, this claim is not cognizable in a § 2254 petition and, to the extent it purports to assert a federal claim, is barred by procedural

default.

Finally, even if the claim were cognizable in this proceeding, Pierce has not demonstrated that he is entitled to habeas relief. He has presented no argument that the decision of the Tennessee Court of Criminal Appeals was contrary to, or an unreasonable application of, clearly established federal law, as required by 28 U.S.C. § 2254(d)(1). Pierce also makes no argument that the decision of the Tennessee Court of Criminal Appeals was based on an unreasonable determination of the facts in light of the evidence presented at the state court hearing.   28 U.S.C. § 2254(d)(2).   In particular, he does not attempt to demonstrate that the factual findings of the Tennessee Court of Criminal Appeals were objectively unreasonable. That court, after reviewing the trial record, was unable to locate an instance in which the trial judge expressed a belief in Pierce's guilt. Pierce's federal habeas petition does not address the state court's decision and does not describe the alleged remark with enough specificity to permit the Court intelligently to evaluate the state court's decision in light of 28 U.S.C. § 2254(d)(2).

Under <u>Brecht</u>, 507 U.S. at 637, a habeas petitioner has the burden of demonstrating that the error "'had a substantial and injurious effect or influence in determining the jury's verdict.'" As Pierce has failed to demonstrate that the decision of the Tennessee Court of Criminal Appeals was erroneous, he necessarily cannot satisfy the more demanding <u>Brecht</u> standard.

Accordingly, petitioner is not entitled to relief on Claim 6.

G.    The constitutionality of the retrial on the first degree murder charge (Claim 7)

Pierce's seventh claim for relief is not clearly articulated. He seems to argue that the retrial violated the Double Jeopardy Clause, and he goes on to contend that the jury in his first trial should have been polled on the first degree murder charge to determine whether the jury unanimously acquitted him of first degree murder.

Pierce raised this issue on direct appeal, and the Tennessee Court of Criminal Appeals rejected it on the merits:

> Finally, the defendant argues that double jeopardy barred the state from retrying him on the offense of first degree premeditated murder because the jury at his first trial determined that he was not guilty of that offense but was unable to agree on his guilt of the lesser offenses.
>
> The record reflects that during deliberations at the defendant's first trial, the jury returned to the courtroom to inquire about the maximum and minimum sentences for each offense.[10] The trial court instructed the jurors that sentencing considerations were irrelevant to their deliberations. The jury retired and later returned, this time reporting that it had reached a verdict on Count Two (attempted first degree murder of the victim's son) but not Count One (first degree murder of the victim). The court gave a further instruction, and the jury retired. When the jury returned to the courtroom again, the foreman reported that further deliberations would not yield a verdict on Count One because some of the jurors were unwilling to change their minds. After

---

[10]  The Tennessee Court of Criminal Appeals stated the following in a footnote:

   The defendant claims in his brief that because the jury inquired about the sentence ranges for second degree murder and voluntary manslaughter, it had necessarily "first acquitted Mr. Pierce of first degree murder and then moved to the lesser included offense." However, the record does not reflect that the jury asked about the sentence ranges for second degree murder and voluntary manslaughter specifically. Rather, the jury's foreperson inquired, "Can we ask you what the minimums and maximums are for each defense [sic]?" Contrary to the defendant's assertion, we think it is entirely possible that the jury desired to consider sentencing information so that it could choose a verdict of guilt of the crime which corresponded with the sentence the jury felt was appropriate for the defendant's actions, even though it had been instructed that sentencing considerations were irrelevant to its deliberations.

State v. Pierce, 2000 WL 1664278, at *8 n.3.

31

the foreman's report, the court polled six additional jurors, and each indicated agreement with the foreman's assessment that no verdict could be reached. *Sua sponte*, the court then polled the jury on its verdict on Count Two, accepted the verdict on Count Two, and declared a mistrial on Count One.

The following colloquy then took place:

MR. LEONARD [Defense Counsel]:  Your Honor please, might I ask—and I do not have my file as it relates to a special verdict form, as it relates to polling the jury as to whether they reached a decision on count one, murder first—
THE COURT:  They have not.
MR. LEONARD:  Okay, sir.
[WHEREUPON, the jury was dismissed.]
THE COURT:  You wouldn't think I would miss something like that, would you?
MR. LEONARD:  Your Honor please, on behalf of my client, I've got to make sure.
THE COURT:  Well, you may assume that I don't miss something quite that simple.

On the special verdict form from the first trial, "not guilty" is circled on Count Two for attempted first degree murder and the lesser-included offenses of attempted second degree murder and attempted voluntary manslaughter. Neither "not guilty" nor "guilty" are circled on Count One for the offense of first degree murder nor for the lesser-included offenses of second degree murder or voluntary manslaughter. The special verdict form is signed by the foreman.

Sometime after the jury was dismissed, defense counsel became aware of a conversation between a T.B.I. agent and the jury foreman which resulted in defense counsel obtaining several affidavits[11] attesting that the jury unanimously found the defendant not guilty of first degree murder but was unable to reach a verdict on a lesser-included offense. The affiants claimed

---

[11]   The Tennessee Court of Criminal Appeals stated in a footnote that:
[i]t is not clear from the defendant's brief whether he claims he obtained affidavits from ten jurors and the T.B.I agent or the jury foreperson and ten additional jurors. The record contains nine affidavits of jurors, none of which [sic] were the foreman, and no affidavit of a T.B.I. agent. The substantive content of the nine affidavits is identical.
State v. Pierce, 2000 WL 1664278, at *9 n.4.

that the jury was unsure whether it should mark "not guilty" on the special verdict form.

The defendant argues that double jeopardy barred his retrial on the offense of first degree murder.[12]  The state and federal constitutions both provide that no person shall, for the same offense, be twice put in jeopardy of life or limb.  U.S. Const. amend. V; Tenn. Const. art. I, § 10.  Our supreme court has held that double jeopardy protects a defendant from (1) reprosecution for the same crime after an acquittal, (2) reprosecution for the same crime after a conviction, and (3) multiple punishments for the same offense. State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996); see also North Carolina v. Pearce, 395 U.S. 711, 717 . . . (1969), overruled on other grounds, Alabama v. Smith, 490 U.S. 794 . . . (1989).  Double jeopardy is not a bar to a subsequent trial where a mistrial has been occasioned by "manifest necessity," such as where the jury has been unable to reach a verdict.  See, e.g., State v. Mounce, 859 S.W.2d 319, 321-22 (Tenn. 1993).

In pertinent part, Tennessee Rule of Evidence 606(b) prohibits a juror from testifying, including by affidavit, about "any matter or statement occurring during the course of the jury's deliberations" with certain exceptions that are not relevant here.  The affidavits offered by defense counsel in support of the double jeopardy claim fall squarely within the class of evidence that is inadmissible under Rule 606(b).  Without competent evidence, the defendant's double jeopardy claim must fail.

Additionally, even if the affidavits were admissible, judicial consideration of them would be of no avail to the defendant.  The jury foreperson's oral report that the jury was deadlocked and the special verdict form reflecting no verdict on Count One plainly establish that the jury was deadlocked.  The law of this state is well-settled that after a jury has been discharged from court, it may not be reassembled to amend, correct or impeach its verdict.  See, e.g., Clark v. State, 170 Tenn. 494, 500, 97 S.W.2d

---

[12]   The Tennessee Court of Criminal Appeals stated as follows in a footnote:

As a preliminary matter, we dismiss the defendant's claim that he requested that the jury be polled and that the court erred by failing to conduct the poll.  The record does not bear out this assertion.  The court polled the jury on Count Two although neither the defense nor the state requested it.  Defense counsel then inquired whether the jury made any findings on the offense and lesser-included offenses encompassed in Count One.  The court responded that the jury had not; defense counsel accepted this answer, and the jury was dismissed without objection.

State v. Pierce, 2000 WL 1664278, at *9 n.5.

644, 646 (1936); State v. Green, 995 S.W.2d 591, 606-614 (Tenn. Crim. App. 1998), *perm. app. denied* (Tenn. 1999). The sound rationale for this rule is that once the jury has been discharged, its members have been separated from the trial court and are subject to outside contacts; thus, further action involving the fate of the accused would be improper. See Green, 995 S.W.2d at 612-13.

In the present case, the gathering of affidavits of some of the jurors was, in practical effect, an attempt to reassemble the jury for purposes of impeaching the prior report of a deadlock on Count One. Obviously, by this point the jury was separated from the trial court and subject to outside contacts. Under our precedent, "reassembly" and "impeachment" were impermissible. As such, the prior report stands, and it constitutes "manifest necessity" for the trial court's grant of a mistrial. Because the grant of a mistrial in a case of manifest necessity does not implicate double jeopardy concerns, the defendant is not entitled to relief on this issue.

State v. Pierce, 2000 WL 1664278, at *8-*9.

An analysis of this issue is complicated because Pierce has not referred to the legal standards for reviewing habeas claims on the merits. Pierce makes no argument that the decision of the Tennessee Court of Criminal Appeals on this issue was contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

Pierce does seem to contend that the decision of the Tennessee Court of Criminal Appeals was based on an unreasonable determination of the facts in light of the evidence presented at the state court hearing. 28 U.S.C. § 2254(d)(2). However, the petitioner fails to demonstrate that the factual findings of the Tennessee Court of Criminal Appeals were objectively unreasonable. In particular, although Pierce states that his trial counsel asked the judge who presided over his first trial to poll the jury and the judge refused, the Tennessee Court of Criminal Appeals specifically stated that "we dismiss the defendant's

claim that he requested that the jury be polled and that the court erred by failing to conduct the poll." State v. Pierce, 2000 WL 1664267, at *9 n.5. The ambiguous colloquy on which Pierce seems to rely does not constitute clear and convincing evidence sufficient to overcome the presumption that the state court's factual findings were correct. See supra pp. 16-17. Pierce also repeats his hypothesis that the jury's question concerning the punishments meant that the jury had voted to acquit him on the first degree murder count, but he does not address the treatment of that issue by the Tennessee Court of Criminal Appeals, including its statement that "the record does not reflect that the jury asked about the sentence ranges for second degree murder and voluntary manslaughter specifically," State v. Pierce, 2000 WL 1664278, at *8 n.3, and its conclusion that "it is entirely possible that the jury desired to consider sentencing information so that it could choose a verdict of guilt of the crime which corresponded with the sentence the jury felt was appropriate for the defendant's actions, even though it had been instructed that sentencing considerations were irrelevant to its deliberations," id. Finally, Pierce fails to address the foreman's report that the jury was deadlocked and the agreement with that report in open court by six of the jurors. Id. at *8. The Tennessee Court of Criminal Appeals concluded, on the basis of that report and the responses of the six additional jurors, that the jury was deadlocked. Id. at *9. Accordingly, Pierce has not satisfied his burden of demonstrating, by clear and convincing evidence, that the state court's conclusion that the jury in his first trial failed to reach a verdict on the first degree murder charge was objective unreasonable.

The petitioner is not entitled to habeas relief on Claim 7.

H.      Ineffective assistance of counsel (Claim 8)

In his eighth claim for relief, Pierce asserts that his trial counsel afforded ineffective assistance, in violation of the Sixth Amendment.  However, the petition does not set forth any specific acts or omissions by trial counsel that are alleged to be constitutionally deficient.

Pierce's presentation of this claim does not comply with the habeas rules.  Rule 2(c) of the Section 2254 Rules provides, in pertinent part, that the petition shall "(1) specify all the grounds for relief available to the petitioner" and "(2) state the facts supporting each ground."  Notice pleading is not permitted in habeas petitions.  Blackledge v. Allison, 431 U.S. 63, 75-76 (1977); Short v. United States, 504 F.2d 63, 65 (6th Cir. 1974).

Although the Court ordinarily would consider whether it is appropriate to afford the petitioner an opportunity to amend his petition to comply with Rule 2(c), in this case claims 9-11 set forth other purported instances of ineffective assistance, and an examination of the opinion of the Tennessee Court of Criminal Appeals on the postconviction petition does not reveal any additional ground that was exhausted but not raised in this petition.

Accordingly, as Claim 8 fails to state any factual basis other than those presented in the subsequent claims, it provides no basis for affording the petitioner relief.

I.      Trial counsel's failure to subpoena witnesses (Claim 9)

In his ninth claim for relief, Pierce asserts that his trial attorney rendered ineffective

36

assistance, in violation of the Sixth Amendment, when he failed to subpoena witnesses who would have established that the shooting occurred in the heat of passion, which could have resulted in a jury verdict of voluntary manslaughter. Pierce raised this claim in his postconviction petition, and the Tennessee Court of Criminal Appeals rejected it on the merits. State v. Pierce, 2004 WL 1872900, at *2-*3, *4-*5 (footnote omitted). Accordingly, this claim was exhausted in state court.

A claim that ineffective assistance of counsel has deprived a habeas petitioner of his Sixth Amendment right to counsel is controlled by the standards enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 688.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Coe v. Bell, 161 F.3d 320, 342 (6th Cir. 1998) ("The specifics of what Coe claims an effective lawyer would have done for him are too voluminous to detail here. They also largely miss the point: just as (or more) important as what the lawyer missed is what he did not miss. That is, we focus on the adequacy or inadequacy of counsel's actual performance, not counsel's (hindsight) potential for improvement."); Adams v. Jago, 703 F.2d 978, 981 (6th Cir. 1983) ("a defendant 'has not been denied effective assistance by erroneous tactical decisions if, at the time, the decisions would have seemed reasonable to the competent trial attorney'").

A prisoner attacking his conviction bears the burden of establishing that he suffered some prejudice from his attorney's ineffectiveness. See Lewis v. Alexander, 11 F.3d 1349, 1352 (6th Cir. 1993); Isabel v. United States, 980 F.2d 60, 64 (1st Cir. 1992). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Strickland, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. See id. at 697.

As previously stated, Pierce exhausted his claim that trial counsel rendered ineffective

38

assistance by failing to subpoena witnesses from the truck stop who could have testified that the killing was committed in the heat of passion.[13]  The Tennessee Court of Appeals denied this claim on the merits, explaining as follows:

> The petitioner testified at the February 28, 2003, evidentiary hearing that trial counsel informed him during a meeting in Memphis that he would appeal his case to the Tennessee Supreme Court and later sent him a letter, dated October 25, 2000, to that effect.  The petitioner denied that he had received a second letter, dated the same day and sent to the same address, in which counsel stated that after dictating the first letter he had begun "to contemplate whether this was something that [the petitioner] wished for [him] to do," and therefore was advising that unless he heard from the petitioner within the next thirty days, he would not file an application for permission to appeal to the supreme court.  The petitioner said he did not learn until September 10, 2002, that an appeal had never been filed.

> The petitioner testified he informed trial counsel of witnesses from the truck stop who would have established that the shooting occurred in the heat of passion, but the witnesses never testified at trial.  Trial counsel never explained why he failed to investigate or subpoena these witnesses, other than to say that it "wasn't the thing to go to."  Trial counsel spoke with him "a couple of times" during the course of his representation, asking if he understood what was going on, and he replied that he "basically" did.  However, he did not understand what was happening with the appeals process and felt that trial counsel failed to keep him informed about it.  The petitioner also testified that he requested that trial counsel provide him with a copy of his trial transcript, but he failed to do so.  On cross-examination, he acknowledged that it was possible he had made statements about killing the victim to witnesses at the truck stop during the two weeks before the shooting.

> Trial counsel testified he had been licensed to practice law since 1986.  He said that approximately thirty percent of his practice was criminal, and the petitioner's case was not his first murder trial.  He testified that when he went

---

[13]  Pierce also exhausted claims regarding appellate counsel's failure to seek permission to appeal to the Tennessee Supreme Court and trial counsel's failure to provide him with a copy of the transcript. These issues are presented in Claims 10 and 11, *infra*. The findings of the Tennessee Court of Appeals with respect to all three ineffective assistance issues are presented here.

to Memphis to discuss the appeal, the petitioner, who had had a heart attack during the second trial, was suffering from diabetes and "felt like . . . he was going to die," "had essentially given up," and "really didn't care" about filing an appeal.   Nevertheless, trial counsel appealed the case through the intermediate court level.  Two days after receiving the opinion, he dictated his first letter to the petitioner dated October 25, 2000.  Trial counsel testified he dictated the second letter later that same day after thinking about the supreme court's criteria for accepting an application for permission to appeal and the fact that the petitioner had no interest in pursuing an appeal.  Although he sent the second letter to the same address as the first, he never heard from the petitioner.  Trial counsel stated that he investigated and interviewed a number of witnesses from the truck stop.   However, because they could have corroborated that the petitioner had threatened to kill the victim, he chose not to have them testify on the petitioner's behalf.

On March 5, 2003, the post-conviction court entered an order granting the petitioner the right to file a delayed application for permission to appeal to the supreme court, finding that, despite the second letter sent to the petitioner, trial counsel had clearly failed to comply with Rule 14 of the Rules of the Tennessee Supreme Court, which sets forth the procedures counsel must follow when withdrawing representation from an indigent client following an adverse ruling of the intermediate appellate court.[14]   The

---

[14]   In a footnote, the Tennessee Court of Criminal Appeals quoted the relevant rule:

Rule 14, "Withdrawal of counsel for indigent party after adverse decision in intermediate appellate court," provides in part:  Permission for leave to withdraw as counsel for an indigent party after an adverse final decision in the Court of Appeals or Court of Criminal Appeals and before preparation and filing of an Application for Permission to Appeal in the Supreme Court must be obtained from the intermediate appellate court by filing a motion with the Appellate Court Clerk not later than fourteen (14) days after the intermediate court's entry of final judgment.

The motion shall state that:  (1) based upon counsel's review of the opinion of the intermediate appellate court, the brief filed on behalf of the indigent party in that court presents such issues as are available for second-tier appellate review if sought by the party acting pro se, and (2) the written notification prescribed by this rule and a copy of the intermediate court's opinion have been forwarded to the indigent party.

The motion shall be accompanied by a copy of the written notification forwarded to the indigent party.  The written notification shall state:  (1) that counsel does not intend to file an Application for Permission to Appeal and that counsel is asking the intermediate court for permission to withdraw; (2) that the party may file a pro se Application for Permission to Appeal with the Clerk of the Supreme Court if filed within sixty (60) days after entry of final judgment in the intermediate appellate court; (3) the date on which the intermediate court's opinion was released;

post-conviction court stayed all other matters contained in the petition pending the outcome of the delayed appeal. On September 2, 2003, our supreme court denied the petitioner's application for permission to appeal. On September 17, 2003, the post-conviction court entered an order dismissing the petition for post-conviction relief, finding that trial counsel's conduct was not deficient and that the petitioner had "not been deprived of any constitutional right that would support post conviction relief." This appeal followed.

    . . . .

As he did with the post-conviction court, the petitioner argues on appeal that trial counsel was ineffective for failing to subpoena the critical truck stop witnesses who could have established state of passion, for failing to pursue his appeal to the supreme court, and for failing to provide him with a transcript of the trial. The State responds by arguing, *inter alia*, . . . that the post-conviction court properly found that trial counsel's decision not to subpoena the witnesses from the truck stop was a sound trial strategy and that the petitioner has not shown he was prejudiced by trial counsel's failure to file an application for permission to appeal or to provide him with a copy of the trial transcript. We agree with the State.

When reviewing a claim of ineffective assistance of counsel, we are mindful that we must indulge a strong presumption that counsel's conduct fell within the range of reasonable professional assistance, see Strickland [v. Washington], 466 U.S. [668,] 690 . . . [1984], and may not second-guess the tactical and strategic choices made by counsel unless those choices were uninformed because of inadequate preparation. . . . Trial counsel testified he investigated and interviewed the truck stop witnesses, and fully explained the reason he decided not to subpoena them to trial:

> And my concern was bringing all these other potential people in, that the jury was going to hear I'm going to kill him if he don't pay me, was just going to keep that testimony time and time again going to trial.

---

and (4) the date on which an Application for Permission to Appeal is due. The written notification must also reflect the party's mailing address to which the notice was forwarded.

State v. Pierce, 2004 WL 1872900, at *3 n.1.

So, from a trial strategy, I didn't want the jury to just keep hearing that. Our position was that he said if he doesn't pay me it's killing me from a financial standpoint.

You had his testimony then against this one Beth Podgeway [sic]. However, if you called these other folks in that would basically corroborate Beth then, obviously, it would look worse towards the defense.

The post-conviction court found that "[c]ounsel's decision in this regard [was] supported by logic and reason, in that some witnesses from the truck stop were called and clearly supported a premeditated act as opposed to a heat of passion type situation." The record fully supports this finding. Furthermore, we agree with the State that the petitioner has not shown how any alleged deficiency in counsel's performance with respect to these witnesses prejudiced his case. When a petitioner contends that trial counsel was ineffective for failing to investigate or present potential witnesses in support of his defense, he bears the burden of presenting these witnesses at the post-conviction evidentiary hearing. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Here, the petitioner neither named the potential witnesses nor presented their testimony at the evidentiary hearing. Without showing what evidence the witnesses would have provided had they been subpoenaed at trial, the petitioner cannot meet the prejudice prong of the Strickland test. Id. at 758.

We further agree with the State that, in light of the post-conviction court's having granted the petitioner the opportunity to file a delayed application for permission to appeal to the supreme court, the petitioner has also failed to show that he was prejudiced by trial counsel's failure to pursue the appeal or to provide him with a copy of his trial transcript.

. . . .

Based on our review, we conclude that the petitioner has failed to meet his burden of showing he was denied the effective assistance of counsel at trial or on appeal. Accordingly, we affirm the post-conviction court's dismissal of the petition for post-conviction relief.

State v. Pierce, 2004 WL 1872900, at *2-*3, *4-*5 (footnote omitted).

Once again, the petitioner does not advance any argument why the decision of the Tennessee Court of Criminal Appeals on this issue was contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1). This is "a run-of-the-mill state-court decision applying the correct legal rule from [Strickland v. Washington] to the facts of a prisoner's case" and, therefore, it "does not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams v. Taylor, 529 U.S. at 406.

It is not clear whether Pierce contends that the decision of the Tennessee Court of Criminal Appeals was an unreasonable application of Strickland. Although it can be inferred that Pierce disagrees with the state court's decision, he makes no attempt to analyze the state court's reasoning in light of Strickland. Moreover, Pierce makes no effort to demonstrate that the state court's decision is objectively unreasonable, rather than merely incorrect. Williams, 529 U.S. at 410; see also supra p. 14 n.6. In this case, the Tennessee Court of Criminal Appeals concluded that Pierce had not demonstrated either deficient performance or prejudice from the failure to call witnesses from the truck stop. The petition fails to address the analysis of the state court and fails to offer any analysis beyond the bare assertion that counsel's failure to call these unspecified witnesses constituted ineffective assistance.

Pierce also does not address whether the decision of the Tennessee Court of Criminal Appeals was based on an unreasonable determination of the facts in light of the evidence presented at the state court hearing. 28 U.S.C. § 2254(d)(2). Even if his argument can be

43

construed as relying on that provision, the petitioner fails to demonstrate that the factual findings of the Tennessee Court of Criminal Appeals were objectively unreasonable. Again, the state court accepted the testimony of trial counsel that it would not be productive to call additional witnesses who would repeat testimony introduced by the State that Pierce had vowed to kill the victim if he was not paid. The Tennessee Court of Criminal Appeals also noted that, in order to find that the failure to call the truck stop witnesses constituted ineffective assistance, it was necessary that the testimony of those witnesses be presented at the postconviction hearing. Because Pierce did not present that testimony at the postconviction hearing, there is nothing in the record to undermine the strategic decision by trial counsel and there is no basis in the record to conclude that Pierce was prejudiced by the failure to call those unspecified witnesses. Accordingly, Pierce has not satisfied his burden of demonstrating, by clear and convincing evidence, that the state court's decision that he failed to establish deficient performance and prejudice, within the meaning of Strickland, was based on an unreasonable determination of the facts in light of the evidence presented at the state court hearing.

For all of the foregoing reasons, Claim 9 is without merit and provides no basis for habeas relief.

J.     Appellate counsel's failure to seek permission to appeal to the Tennessee Supreme Court (Claim 10)

In his tenth claim for relief, Pierce asserts that his trial counsel rendered ineffective assistance, in violation of the Sixth Amendment, by failing to seek permission to appeal to

the Tennessee Supreme Court. Pierce raised this issue in his postconviction petition, and the postconviction court responded by granting leave to seek a delayed appeal to the Tennessee Supreme Court, which denied leave to appeal. Thereafter, the postconviction court rejected the claim on the merits, and the Tennessee Court of Criminal Appeals affirmed.

Once again, the petitioner does not advance any argument why the decision of the Tennessee Court of Criminal Appeals on this issue was contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1). This is "a run-of-the-mill state-court decision applying the correct legal rule from [Strickland v. Washington] to the facts of a prisoner's case" and, therefore, it "does not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams v. Taylor, 529 U.S. at 406.

It is not clear whether Pierce contends that the decision of the Tennessee Court of Criminal Appeals was an unreasonable application of Strickland. Although it can be inferred that Pierce disagrees with the state court's decision, he makes no attempt to analyze the state court's reasoning in light of Strickland. Moreover, Pierce makes no effort to demonstrate that the state court decision is objectively unreasonable, rather than merely incorrect. Williams, 529 U.S. at 410; see also supra p. 14 n.6. In this case, the Tennessee Court of Criminal Appeals concluded, on the basis of the fact that the Tennessee Supreme Court denied permission to appeal, that Pierce was not prejudiced by his attorney's failure to file an application. Pierce fails to address that fact, which is dispositive of this claim. Accordingly, Claim 10 is without merit and is DISMISSED.

45

K.   Trial counsel's failure to give petitioner a copy of the transcript (Claim 11)

In his final claim for relief, Pierce complains that his trial counsel did not provide him with a copy of the transcript. Pierce raised this claim in his postconviction petition, where it was analyzed as an ineffective assistance claim and rejected on the merits.

This issue is not cognizable in a petition pursuant to 28 U.S.C. § 2254, as it does not assert that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). This is not a claim that the performance of counsel at trial was constitutionally deficient. Moreover, Pierce cannot cite any authority for the proposition that the federal constitution guarantees state prisoners the right to obtain their trial transcripts from their former attorneys.[15] Claim 11 is also without merit.

Because it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court," summary dismissal prior to service on the respondent is proper. Rule 4, Section 2254 Rules. For all of the foregoing reasons, the petition is hereby DISMISSED.

V.   APPEAL ISSUES

The Court must also determine whether to issue a certificate of appealability

---

[15]   The fact that there is no constitutional basis for this claim is demonstrated by the fact that federal prisoners have no automatic right to a free transcript. "A federal prisoner is not entitled to obtain copies of Court records at the Government's expense to search for possible defects merely because he is indigent." Campbell v. United States, 538 F.2d 692, 693 (5th Cir. 1976); see United States v. Lewis, 605 F.2d 379, 380 (8th Cir. 1979) (no post-appeal right to a transcript before filing motion under 28 U.S.C. § 2255); Bentley v. United States, 431 F.2d 250, 252 (6th Cir. 1970) (defendant not entitled to free transcript to search for grounds to file a motion under § 2255); United States v. Glass, 317 F.2d 200, 202 (4th Cir. 1963) ("An indigent is not entitled to a transcript at government expense without a showing of the need, merely to comb the record in the hope of discovering some flaw.").

46

("COA"). The statute provides:

> (1)   Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>   (A)   the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>   (B)   the final order in a proceeding under section 2255.
> (2)   A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
> (3)   The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2254 petitioner may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were '"adequate to deserve encouragement to proceed further."'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court recently cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in Slack held that a COA does not require a showing that the appeal will succeed.  Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not

> demonstrate an entitlement to relief.  The holding in <u>Slack</u> would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail.  It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief.  After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 337 (2003) (quoting <u>Barefoot</u>, 463 U.S. at 893).  Thus:

> A prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus.  Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

<u>Id.</u> at 338 (quoting <u>Barefoot</u>, 463 U.S. at 893); <u>see also id.</u> at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA: "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[16]

In this case, there can be no question that any appeal by this petitioner on any of the issues raised in this petition does not deserve attention as the petition is time barred.  The Court, therefore, DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying habeas petitions.  <u>Kincade v. Sparkman</u>, 117 F.3d 949, 951 (6th Cir. 1997).  Rather, to appeal <i>in forma pauperis</i> in a

---

[16] By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue."  <u>Id.</u> at 337.  Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not."  <u>Id.</u>

habeas case, and thereby avoid the $255 appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). <u>Kincade</u>, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. <u>See</u> Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal *in forma pauperis* is DENIED. Accordingly, if petitioner files a notice of appeal, he must also pay the full $255 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 13th day of October, 2005.

JAMES D. TODD
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 7 in
case 2:05-CV-02250 was distributed by fax, mail, or direct printing on
October 14, 2005 to the parties listed.

Lon Adelbert Pierce
304581
P.O. Box 1150
Henning, TN 38041

Honorable James Todd
US DISTRICT COURT